# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

DAVID SCHIED,

       Plaintiff,

v.                                                                  CASE NO. 08-14944
                                        HON. LAWRENCE P. ZATKOFF

MARTHA CRAIG DAUGHTREY,
DAVID WILLIAM McKEAGUE,
GREGORY VAN TATENHOVE,
STEPHEN J. MURPHY, TERRENCE
BERG, ROD CHARLES, ANDREW
ARENA, MARGARET COLGATE
LOVE, GREG ABBOTT, MICHAEL
MUKASEY, MARIE O'ROURKE,
SHANETTA Y. CUTLAR, and
JOHN DOES,

       Defendants.
_____/

## OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on March 25, 2009

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

On November 26, 2008, Plaintiff, appearing pro se, filed an application to proceed *in forma pauperis*. At that time, he also filed his original complaint, which spanned 194 pages and 374 paragraphs (excluding subparagraphs), including 80 footnotes and 80 exhibits. Taken together, Plaintiff's initial complaint and exhibits totaled nearly 600 pages. On December 29, 2008, the Court

granted Plaintiff's application to proceed *in forma pauperis*, dismissed Plaintiff's complaint for failure to comply with Fed. R. Civ. P. 8, and granted Plaintiff leave to file an amended complaint. On January 27, 2009, Plaintiff filed his amended complaint [dkt 13]. The amended complaint as submitted suffered from various shortcomings, including (1) its incorporation of a separate and distinct motion (for the undersigned to disqualify himself), (2) a brief in conjunction with another distinct motion (to order a criminal grand jury investigation), and (3) the fact that it still spanned 154 pages and 570 paragraphs while attempting to incorporate the stricken original complaint by reference. On February 10, 2009, the Court issued an Opinion and Order striking various portions of Plaintiff's amended complaint. At that time, the Court had not performed the screening of the amended complaint as required by 28 U.S.C. § 1915. The Court does so now and, for the reasons set forth below, DISMISSES Plaintiff's amended complaint as it is frivolous, fails to state a ground upon which relief may be granted, and seeks relief from immune parties.

## II. BACKGROUND

The present matter originates from Plaintiff's plea of guilty to aggravated robbery in Texas in 1977. Pursuant to the plea, Plaintiff was convicted of the offense and sentenced to a term of probation. After Plaintiff served two years of his sentence, a Texas court set aside his conviction and, by virtue of an official pardon from the Governor of Texas, Plaintiff's civil rights were restored in 1983. Since Plaintiff's 1977 transgression, he has led an exemplary life. He matriculated to the University of Southern California where he graduated with honors. Plaintiff has acted as a victim's rights advocate, has published three books on self-defense, and now has a family.

Plaintiff ultimately pursued the teaching profession, which led him and his family to Michigan where he obtained conditional employment with Lincoln Consolidated Schools in

2

September 2003. The employment application for this position required Plaintiff to indicate whether he had ever been convicted of a felony. Believing that the set-aside and pardon effectively eliminated his 1977 conviction, Plaintiff answered "no." A subsequent FBI criminal background investigation, however, revealed Plaintiff's felony conviction. The FBI background report did not indicate that Plaintiff's 1977 conviction had been set aside. In November 2003, Lincoln Consolidated Schools terminated Plaintiff's employment for misrepresenting his criminal history.

Plaintiff has actively sought judicial review of the decision to terminate his employment. In 2004, Plaintiff, through counsel, brought suit against Lincoln Consolidated Schools, Lincoln Consolidated Schools Board of Education, and the superintendent of the Lincoln school district. On November 10, 2005, the Washtenaw County Circuit Court granted summary disposition to all of the defendants. Plaintiff appealed the decision, but the Michigan Court of Appeals rejected his appeal on the merits, holding that "while the 1979 early termination order relieved plaintiff from the order of conviction and the legal liabilities arising therefrom, the early termination order did not erase the existence of the 1977 conviction such that the plaintiff could deny truthfully in September 2003 that any conviction ever existed." *Schied v. Lincoln Consol. Schs.*, No. 267023, 2006 Mich. App. LEXIS 2099, at *13 (Mich. Ct. App. June 29, 2006). The court further held that the gubernatorial pardon "only restored plaintiff's 'full civil rights of citizenship that may have . . . been lost as a result of' the 1977 conviction.'" *Id.* at *14. The court also rejected Plaintiff's argument that the termination of his employment violated public policy. The Michigan Supreme Court denied Plaintiff's application for leave to appeal on November 29, 2006. *Schied v. Lincoln Consol. Schs.*, 723 N.W.2d 895 (Mich. 2006).

In 2005, Plaintiff worked as a substitute teacher for the Northville Public Schools System. Plaintiff subsequently applied for a teaching position with the Brighton School District. In conjunction with this application, Plaintiff signed a release authorizing his former employers to disclose to Brighton Schools any previous unprofessional conduct. The release exempted Plaintiff's former employers from any liability for providing such information. Pursuant to the release, the Northville Public Schools System provided the Brighton School District with Plaintiff's employee personnel file, which included documents referencing his 1977 aggravated robbery conviction.

Plaintiff once again retained counsel in 2006 for the purpose of filing suit against the Northville Public Schools District. In that action, Plaintiff sought an injunction to remove all information pertaining to his 1977 conviction from his personnel file, an injunction preventing Northville from disseminating information regarding the conviction, and monetary damages on theories of libel and slander. On April 19, 2007, the state court granted summary disposition in favor of the defendants based on the fact that Plaintiff signed the release authorizing the dissemination of his file. Plaintiff did not appeal that decision.

Appearing pro se, Plaintiff then filed what he termed to be a "criminal" complaint in Ingham County Circuit Court. The court dismissed Plaintiff's 405-page, 180-exhibit complaint for failure to adhere to the Michigan Court Rules governing pleadings. Plaintiff did not avail himself of the opportunity to file a compliant complaint within the time period prescribed by the court, and the case was dismissed without prejudice. Plaintiff appealed that decision, but the Michigan Court of Appeals has not yet reached a decision.

Plaintiff, through counsel, filed a federal lawsuit on January 2, 2008, in the United States District Court for the Eastern District of Michigan. In that suit, over which Judge Borman presided,

4

Plaintiff asserted claims under 42 U.S.C. § 1983 for injunctive relief and monetary damages arising out of the dissemination of his Texas criminal record. Plaintiff's case was dismissed on res judicata grounds. On August 5, 2008, the United States Court of Appeals for the Sixth Circuit dismissed Plaintiff's petition for a writ of mandamus and accompanying motion for a criminal grand jury investigation. His appeal on the merits has not been ruled on yet.

Plaintiff construes the consistent negative responses from various governmental employees and bodies as a conspiracy to deny him of his rights. Plaintiff accordingly brings this suit in which he alleges that Steven Murphy and Terrence Berg of the United States Attorney's Office, Rod Charles, Jerome Pender (originally named as "John Doe"), Grant Ashley (originally named as "John Doe"), Andrew Arena, David Hardy (originally named as "John Doe"), Melanie Tiddle (originally named as "John Doe"), Shanetta Cutlar, and Marie O'Rourke of the Federal Bureau of Investigation ("FBI"), Martha Daughtrey, David McKeague, and Gregory Van Tatenhove of the federal judiciary, Thomas Davis, Jr. (originally named as "John Doe"), Greg Abbott, and Scott Graydon (originally named as "John Doe") of the Texas state government, former United States Pardon Attorney Margaret Colgate Love, former United States Attorney General Michael Mukasey, and several other "John Does" have acted conspiratorially and criminally to "cover up" the "illegal" actions and decisions of governmental officials in Michigan and Texas.

### III. LEGAL STANDARD

Upon granting a plaintiff's request to proceed *in forma pauperis*, the Court performs a preliminary screening of the complaint under § 1915(e). Under 28 U.S.C. § 1915(e)(2), the Court "shall dismiss" the case at any time if it finds that the case is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who

is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).  A complaint is frivolous under § 1915 if it lacks an arguable basis in law or fact.  *See Neitzke v. Williams*, 490 U.S. 319, 323 (1989); *see also Wilson v. Yaklich*, 148 F.3d 596, 600 (6th Cir. 1998) (stating that complaints can be dismissed as frivolous "only when the claim is based on an indisputably meritless legal theory, or where the complaint's factual contentions are clearly baseless.").

The Court's determination of failure to state a claim under § 1915 is the same as its determination under Fed. R. Civ. P. 12(b)(6).  *See* 1 Moore's Fed. Practice § 4.41[3].  A complaint fails to state a claim where it lacks "either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory."  *See Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988).  Moreover, although any ambiguities must be resolved in the plaintiff's favor, *see Jackson v. Richards Med. Co.*, 961 F.2d 575, 577–78 (6th Cir. 1992), the Court is "not required to accept non-specific factual allegations and inferences or unwarranted legal conclusions."  *Hendrock v. Gilbert*, 68 Fed. Appx. 573, 574 (6th Cir. 2003) (citations omitted).

In *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), the United States Supreme Court recently clarified the standard of pleading necessary to survive a motion to dismiss: "[f]actual allegations must be enough to raise a right to relief beyond the speculative level" and "more than labels and conclusions" are required in order for a pleading to avoid dismissal.  *Id*. at 555.  While this standard is decidedly liberal, it requires more than the bare assertion of legal conclusions.  *See Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999).  The Court may properly grant a motion to dismiss when no set of facts exists that would allow Plaintiff to recover. *See Carter by Carter v. Cornwall*, 983 F.2d 52, 54 (6th Cir. 1993).

6

The Court has a duty to construe a *pro se* plaintiff's pleadings liberally, *see, e.g.*, *Haines v. Kerner*, 404 U.S. 519 (1972), but in doing so, it will not re-write a deficient complaint or otherwise serve as counsel for that plaintiff.  *See GJR Invs, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998).  While leave to amend pleadings is generally to be liberally given, *see Forman v. Davis*, 371 U.S. 178 (1962); Fed R. Civ. P. 15(a), this is not true when the Court reviews a complaint under § 1915(e).  *See Hawkins v. Morse*, 194 F.3d 1312, at *1 (6th Cir. 1999) (table opinion) ("The Court is not required to allow a plaintiff to amend his complaint in order to avoid a sua sponte dismissal."); *McGore v. Wrigglesworth*, 114 F.3d 601, 612 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

## IV.  ANALYSIS

A.   COUNT I: "OFFICIAL MISCONDUCT; DERELICTION OF DUTY; INCOMPETENCE; GROSS NEGLIGENCE; MALFEASANCE OF DUTY; PERJURY OF OATH; MISPRISION OF FELONY; CONSPIRACY TO DEPRIVE OF RIGHTS, (AND) OBSTRUCTION OF JUSTICE" BY U.S. ATTORNEY STEPHEN J. MURPHY

On March 24, 2007, Plaintiff sent Defendant Steven J. Murphy a two-page letter reporting what Plaintiff considered to be crimes committed against him by officials of the Michigan government.  This letter indicated that Plaintiff suspected a "chain conspiracy" involving criminal violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO").  Murphy responded that the U.S. Attorney's office only "prosecutes criminal cases referred to [it] by the various federal investigative agencies."   Plaintiff claims that this response and the refusal to institute criminal proceedings follow the "same 'pattern' of responses depicted by the 'conspiracy' complaint in that it was 'rhetorical' in nature and omitted any form of address of the criminal allegations."

7

At the outset, the Court reiterates that, despite Plaintiff's averments to the contrary, his complaint is not criminal in nature.  As stated in the Court's February 10, 2009, Opinion and Order, the Court construes Plaintiff's complaint as civil in nature.  To the extent that any of Plaintiff's claims are premised on criminal liability, those claims must be dismissed because "[i]n American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."  *Linda R. S. v. Richard D.*, 410 U.S. 614, 619 (1973).   For this reason, the United States Attorney and federal grand juries have sole authority and discretion to initiate federal criminal proceedings.  *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989) (per curiam); *Milgrom v. Burstein*, 374 F. Supp. 2d 523, 529 (E.D. Ky. 2005).  Put more simply, this Court has no authority to order the filing of a criminal complaint.  *See, e.g.*, *Milgrom*, 374 F. Supp. 2d at 529; *Sahagian v. Dickey*, 646 F. Supp. 1502, 1506 (W.D. Wis. 1986).  Misprision of felony, perjury, and obstruction of justice are all criminal offenses.  *See* 18 U.S.C. §§ 4, 1505, 1621.[1]  Therefore, this Court lacks jurisdiction over these claims and accordingly dismisses them.  *See, e.g.*, *Barr v. Camelot Forest Conservation Assoc.*, 153 Fed. Appx. 860, 862 (3d Cir. 2005); *Collyer v. Darling*, 98 F.3d 211, 222 (6th Cir. 1996); *Mercer v. Lexington Fayette Urban County Gov't*, 52 F.3d 325 (6th Cir. 1995);

---

[1] Even if these offenses can be characterized as civil in nature, Plaintiff's amended complaint does not state a claim upon which relief may be granted with respect to these three causes of action.  The concept of misprision of felony is codified at 18 U.S.C. § 4.  *See, e.g.*, *United States v. McGilvery*, 403 F.3d 361, 361 (6th Cir. 2005).  Misprision of felony, which penalizes the failure to report actual knowledge of a felony, is comprised of four elements: "(1) the principal committed and completed the felony alleged; (2) the defendant had full knowledge of that fact; (3) the defendant failed to notify authorities; and (4) the defendant took steps to conceal the crime." *United States v. Thomas*, 99 Fed. Appx. 665, 671 (6th Cir. 2004) (quoting *United States v. Gebbie*, 294 F.3d 540, 544 (3d Cir. 2002)).  Plaintiff cannot satisfy this standard.  Although Plaintiff is convinced that he is the victim of a felony, no felony charges have been brought.  Even if a felony existed, Plaintiff can only establish that he sent a letter to Murphy.  This does not constitute full or actual knowledge.

A claim for "civil perjury" generally requires a showing that: "(1) a judgment has been obtained against a party, (2) by perjury of witness, (3) which was introduced at trial by the adverse party." *Palkow v. CSX Transp., Inc.*, 431 F.3d 543, 554 n.7 (6th Cir. 2005). Murphy never testified at any trial involving Plaintiff. Therefore, Plaintiff cannot establish a claim for civil perjury.

Obstruction of justice "is not a cognizable civil claim."  *Chapman v. The Chronicle*, No. 07-4775, 2009 U.S. Dist. LEXIS 4260, at *10 (N.D. Cal. Jan. 14, 2009).

*Bansal v. Russ*, 513 F. Supp. 2d 264, 279–80 (E.D. Penn. 2007); *Forney v. Woodridge Hosp. & Johnson City Med. Ctr.*, 2005 U.S. Dist. LEXIS 37257, at \*6 (E.D. Tenn. Sept. 14, 2005)*; see also United States ex rel. Savage v. Arnold*, 403 F. Supp. 172 (E.D. Pa. 1975); *United States v. Panza*, 381 F. Supp. 1133, 1133 (W.D. Penn. 1973); *Brown v. Duggan*, 329 F. Supp. 207 (W.D. Pa. 1971); *United States ex rel. Spader v. Wilentz*, 25 F.R.D. 492 (D.N.J.), *aff'd,* 280 F.2d 422 (3d Cir.), *cert. denied* 364 U.S. 875 (1960)).

Plaintiff's claims against Murphy primarily amount to Plaintiff's belief that Murphy's response to his March 24, 2007, letter was inadequate; however, "failure to conduct a full and fair investigation and prosecution of an alleged crime does not state a claim unless there is a violation of another recognized constitutional right." *Smallwood v. McDonald*, 805 F.2d 1036 (6th Cir. 1986) (citing *Gomez v. Whitney*, 757 F.2d 1005, 1006 (9th Cir. 1985) (per curiam)); *Nelson v. Detroit Police Dep't*, 798 F.2d 470 (6th Cir. 1986). Plaintiff alleges that Murphy violated his rights, but he does so generally, without specifying any particular constitutional right. Accordingly, these claims must be dismissed for failure to state a claim upon which relief may be granted. *See Marks v. City of Warren*, No. 98-74903, 1999 U.S. Dist. LEXIS 17990 (E.D. Mich. Oct. 29, 1999). This encompasses Plaintiff's claims of official misconduct, gross negligence, dereliction of duty, and malfeasance of duty.

Plaintiff also claims "incompetence" against Murphy. Incompetence, however, "is not a cause of action recognized by law." *Karchin v. Metzenbaum*, 587 F. Supp. 563, 565 (N.D. Ohio 1983). Therefore, the Court must also dismiss this portion of Count I for failure to state a claim upon which relief may be granted.

Plaintiff's only remaining claim against Murphy is that he is part of a conspiracy to deprive

Plaintiff of his rights.  For reasons set forth above, the Court construes this claim to be one of a civil

conspiracy to violate Plaintiff's rights:

> A civil conspiracy is an agreement between two or more persons to
> injure another by unlawful action. Express agreement among all the
> conspirators is not necessary to find the existence of a civil
> conspiracy. Each conspirator need not have known all of the details
> of the illegal plan or all of the participants involved. All that must be
> shown is that there was a single plan, that the alleged coconspirator
> shared in the general conspiratorial objective, and that an overt act
> was committed in furtherance of the conspiracy that caused injury to
> the complainant.

*Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985).  Federal law prohibits conspiracies to violate

civil rights.  42 U.S.C. § 1985(3).  To establish such a violation, Plaintiff must allege that both a

conspiracy and an actual deprivation of rights took place.  *Hampton v. Hanrahan*, 600 F.2d 600,

620–23 (7th Cir. 1979).  Civil-conspiracy claims "must be pled with some specificity: vague and

conclusory allegations that are unsupported by material facts are not sufficient to state a § 1983

claim."  *Farhat v. Jopke*, 370 F.3d 580, 599 (6th Cir. 2004) (citing *Gutierrez v. Lynch*, 826 F.2d

1534, 1538 (6th Cir. 1987)).  Plaintiff must prove an actual violation under 42 U.S.C. § 1983 to

succeed on his civil-conspiracy claim.  *See Scott v. Stone*, 254 Fed. Appx. 469, 474–75 (6th Cir.

2007) (citing *Torres-Rosado v. Rotger-Sabat,* 335 F.3d 1, 14 (1st Cir. 2003); *Vaden v. Village of

Maywood, Ill.*, 809 F.2d 361, 366 (7th Cir. 1987)).

Applying that framework to the present case, there are no facts or inferences therefrom to

support a civil-conspiracy claim.  Plaintiff alleges that Murphy's response to his letter "followed the

same 'pattern' of responses depicted by the 'conspiracy' complaint in that it was 'rhetorical' in

nature and omitted any form of address of the criminal allegations."  Plaintiff further contends that

Murphy's decision not to investigate Plaintiff's allegations "show[s] he intended to thwart not only

10

the immediate institution of the FBI investigation but also a grand jury investigation."  Plaintiff apparently suffered injury at the hands of Murphy because the latter "allowed the innocent to continue to suffer from the alleged wrongdoings of the accused."

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  In this case, Plaintiff has not suggested how Murphy could have possibly conspired with others to deprive him of his rights.  Moreover, Plaintiff does not allege with whom Murphy allegedly conspired.  *See Sellers v. Daniels*, 242 Fed. Appx. 363, 364 (7th Cir. 2007).  Even presuming that Plaintiff alleges Murphy to have conspired with the other defendants in this matter and the other complaints that he has filed, Plaintiff has not alleged a single instance in which Murphy communicated with any of them.  Finally, Plaintiff has not alleged a violation under 42 U.S.C. § 1983.  Therefore, Plaintiff's civil-conspiracy claim against Murphy must be dismissed.

In addition to the foregoing, Plaintiff's claims against Murphy fail on account of the latter's immunity.  When prosecutors act in ways related to their prosecutorial functions, they are entitled to absolute prosecutorial immunity.  *See, e.g.*, *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *Lanier v. Bryant*, 332 F.3d 999, 1005 (6th Cir. 2003).  When prosecutors perform administrative functions, they are "granted a qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Wilson v. Layne*, 526 U.S. 603, 614 (1999) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  The determination whether an official protected by qualified immunity may be "held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken."  *Anderson v. Creighton,* 483 U.S. 635,

11

639 (1987) (citing *Harlow*, 457 U.S. at 819). Even if the Court examines Murphy's actions under the qualified-immunity lens, it must dismiss Count I because Plaintiff alleges no "clearly established statutory or constitutional right" that was violated. Nor do the voluminous submissions of Plaintiff establish such a right. Accordingly, the Court dismisses Count I in its entirety.

**B.     COUNT II: "OFFICIAL MISCONDUCT; DERELICTION OF DUTY; INCOMPETENCE; GROSS NEGLIGENCE; MALFEASANCE OF DUTY; PERJURY OF OATH; MISPRISION OF FELONY; CONSPIRACY TO DEPRIVE OF RIGHTS; (AND) OBSTRUCTION OF JUSTICE" BY FBI AGENT ROD CHARLES**

Upon the suggestion of Murphy, Plaintiff contacted the FBI numerous times regarding his allegations against the various Michigan government officials. Plaintiff's written correspondences ultimately led to several phone conversations with Defendant Rod Charles, who decided not to institute an investigation of Plaintiff's claims.

For the reasons set forth in Part IV(A), *supra*, Plaintiff's claims of official misconduct, dereliction of duty, incompetence, gross negligence, malfeasance of duty, perjury of oath, misprision of felony, and obstruction of justice in Count II must be dismissed for failure to state a claim upon which relief may be granted. Plaintiff again alleges conspiracy "but discloses nothing more than the conclusory statement that a conspiracy among defendants has deprived plaintiff of [his] civil rights." *Picking v. State Fin. Corp.*, 332 F. Supp. 1399, 1402 (D. Md. 1971).

Additionally, Defendant Charles, as a member of the FBI, is immune from Plaintiff's suit because Plaintiff alleges no "clearly established statutory or constitutional right" that was violated. Once again, the voluminous submissions of Plaintiff do not establish such a right. Therefore, the Court dismisses Count II in its entirety.

**C.     COUNT III: "OFFICIAL MISCONDUCT; DERELICTION OF DUTY; INCOMPETENCE; GROSS NEGLIGENCE; MALFEASANCE OF DUTY; PERJURY OF OATH; MISPRISION**

12

OF FELONY; CONSPIRACY TO DEPRIVE OF RIGHTS; (AND) OBSTRUCTION OF JUSTICE" BY U.S. ATTORNEY TERRENCE BERG

When Murphy was appointed to serve as judge for the United States District Court for the Eastern District of Michigan, Defendant Terrence Berg assumed the role of Acting United States Attorney for the Eastern District of Michigan.  Plaintiff corresponded numerous times with Berg and his office, reiterating his allegations against various employees of the Michigan government.  Berg ultimately informed Plaintiff that his office had "discussed [Plaintiff's] contacts with the [FBI] during the past year and we have decided that this office will take no further action concerning your allegations."

For the reasons set forth in Part IV(A), *supra*, Plaintiff's claims of official misconduct, dereliction of duty, incompetence, gross negligence, malfeasance of duty, perjury of oath, misprision of felony, and obstruction of justice in Count III must be dismissed for failure to state a claim upon which relief may be granted.  Against Berg, Plaintiff alleges that he "and the FBI were collaborating to deny him access to a Grand Jury for a hearing on these criminal complaints."  Access to a Grand Jury is not a right contemplated by 42 U.S.C. § 1983.  Further, for reasons set forth in Part IV(A), *supra*, Berg has immunity against Plaintiff's claims.  Accordingly, Count III must also be dismissed in its entirety.

### D. COUNT IV: VIOLATION OF 5 U.S.C. § 552 OF THE FREEDOM OF INFORMATION ACT BY U.S. ATTORNEY TERRENCE BERG

On October 1, 2008, Plaintiff sent a certified letter to Berg, requesting "evidence of all 'contacts' between the FBI and the U.S. Attorney's office, and records kept by the FBI and the U.S. Attorney's office concerning Mr. Schied's criminal allegations to these two Department of Justice departments and offices."  Plaintiff made this request pursuant to the Freedom of Information Act,

13

5 U.S.C. § 552 ("FOIA").  Berg apparently never responded to this request in any fashion.  On October 16, 2008, however, Plaintiff made substantially the same request, and he received a response to this second request.  In Count VI, Plaintiff brings a FOIA claim on the basis of his October 16, 2008, request, discussed in Part IV(F), *infra*.  For the reasons discussed in Part IV(F), *infra*, Plaintiff's FOIA claim relating to his October 16 request must be dismissed.  Because the FOIA request in this Count is substantively the same as the request in Count VI, the Court dismisses the FOIA claim in Count IV as moot.

      **E.**     **COUNT V: "OFFICIAL MISCONDUCT; DERELICTION OF DUTY; INCOMPETENCE; GROSS NEGLIGENCE; MALFEASANCE OF DUTY; PERJURY OF OATH; MISPRISION OF FELONY; CONSPIRACY TO DEPRIVE OF RIGHTS; OBSTRUCTION OF JUSTICE, (AND) CONSPIRACY TO DEFRAUD THE UNITED STATES" BY FBI "SPECIAL AGENT IN CHARGE" ANDREW ARENA, "ASSISTANT SPECIAL AGENT IN CHARGE" WALT REYNOLDS, CURRENT OR FORMER "DEPUTY ASSISTANT DIRECTOR OF THE OPERATIONS BRANCH OF THE CRIMINAL JUSTICE INFORMATION SERVICES DIVISION" JEROME M. PENDER; AND CURRENT OR FORMER "ASSISTANT DIRECTOR OF THE CRIMINAL INVESTIGATIVE DIVISION" GRANT D. ASHLEY, NAMED ORIGINALLY AS "DOES"**

In this claim, Plaintiff contends that Defendants Andrew Arena, Walt Reynolds, Jerome Pender, and Grant Ashley, all employees of the FBI, contributed to the decision that Plaintiff's allegations had "no nexus" for opening an investigation.  For the reasons set forth in Part IV(A), *supra*, Plaintiff's claims of official misconduct, dereliction of duty, incompetence, gross negligence, malfeasance of duty, perjury of oath, misprision of felony, and obstruction of justice in Count V must be dismissed for failure to state a claim upon which relief may be granted.

The only remaining claims in this Count are conspiracy to deprive Plaintiff of rights and conspiracy to defraud the United States.  In conjunction with this Count, Plaintiff alleges that he was deprived of "his rights to due process, of his rights to full faith and credit, of his rights to equal

employment, of his rights to privacy, of his rights to accuracy in criminal history records, and of his rights to criminal protection."  Regardless of the inclusion of some constitutional rights, Plaintiff's claims are vague, conclusory, and frivolous. *See, e.g.*, *Mendlow v. Seven Locks Facility*, 86 F. Supp. 2d 55 (D. Conn. 2000); *Waller v. Butkovich*, 584 F. Supp. 909, 931 (M.D. N.C. 1984) ("Allegations that the defendants' actions combined to injure the plaintiffs are not a sufficient basis from which to imply a conspiracy.").  Among other claims of evidence, Plaintiff points to the absence of quotation marks in a letter written by Defendant Pender and a website devoted to others in positions similar to Plaintiff.  Plaintiff continues to maintain that the set aside and pardon he received with respect to his 1977 conviction erased that conviction's existence.  The Michigan courts, however, have determined otherwise.  Therefore, Plaintiff's arguments that take root in his interpretation of Texas law cannot provide a basis for legal action and must be dismissed.

Additionally, Arena, Reynolds, Pender, and Ashley are entitled to qualified immunity. Although Plaintiff has alleged deprivation of certain constitutional rights, he has done so vaguely and conclusively, relying on his belief that the Michigan courts erroneously interpreted Texas law. Under the circumstances, the collective decision of Arena, Reynolds, Pender, and Ashley not to institute a criminal investigation was objectively reasonable.  Accordingly, Count V also must be dismissed in its entirety.

F.     COUNT VI: VIOLATION OF 5 U.S.C. § 552 OF THE FREEDOM OF INFORMATION ACT AND "CONSPIRACY TO DENY RIGHTS UNDER COLOR OF LAW" BY FBI "SPECIAL AGENT IN CHARGE" ANDREW ARENA AND "RIDS SECTION CHIEF" DAVID M. HARDY AND OTHER "DOES" EMPLOYED BY THE RECORD MANAGEMENT DIVISION OF THE FBI

On October 16, 2008, Plaintiff submitted an 11-page letter to Defendant Arena.  That letter included a "Request for copies of all records related to 'David Schied' under the Freedom of

15

Information Act."  Arena forwarded this request to the FBI offices in Washington D.C. for a response.  Defendant Hardy ultimately responded to Plaintiff's request, stating that the request "did not contain sufficient information to conduct an accurate search of the central records."  Specifically, Hardy indicated that Plaintiff needed to submit his date of birth and place of birth.  Plaintiff responded to Hardy but did not submit the requested information.  Rather, Plaintiff broadened his quest, seeking "records for anyone and everyone with the first name of David and the last name of Schied regardless of birth date and place of birth, and regardless of whether there is by reference a middle name or middle initial."  No one from the FBI provided "a viable response."

This claim exemplifies the frivolity of Plaintiff's entire complaint.  He was given the opportunity to clarify his FOIA request but instead requested records for any and all persons bearing his name.  Remarkably, Plaintiff indicated his understanding that certain information would be censored to protect against potential invasions of privacy.  But, without providing the requested information, it is not clear how Plaintiff expected the FBI to know which David Schied he was.  Further, Plaintiff failed to exhaust administrative remedies.  Therefore, the Court lacks jurisdiction over Plaintiff's FOIA claim.  *See, e.g.*, *Dettmann v. United States Dep't of Justice*, 802 F.2d 1472, 1476–77 (D.C. Cir. 1986); *Barvick v. Cisneros*, 941 F. Supp. 1015, 1018 n.3 (D. Kan. 1996); *see also* 5 U.S.C. § 552(a)(6)(A).

Plaintiff alleges conspiracy once again, this time with respect to his FOIA request.  As discussed above, however, Plaintiff (1) had an opportunity to clarify his request, and (2) has not exhausted administrative remedies.  Under the facts of this case, Count VI lacks an arguable basis in law or fact.  Therefore, Plaintiff's entire claim under Count VI must be dismissed.

### G.    COUNT VII: "OFFICIAL MISCONDUCT; DERELICTION OF DUTY; INCOMPETENCE;

**GROSS NEGLIGENCE; MALFEASANCE OF DUTY; PERJURY OF OATH; MISPRISION OF FELONY; CONSPIRACY TO DEPRIVE OF RIGHTS; OBSTRUCTION OF JUSTICE; JUDICIAL MISCONDUCT; AND CONSPIRACY TO DEFRAUD THE UNITED STATES" BY SIXTH CIRCUIT COURT OF APPEALS JUDGES MARTHA CRAIG DAUGHTREY, DAVID WILLIAM MCKEAGUE, AND GREGORY F. VAN TATENHOVE**

In a prior action before Judge Borman of this court, Plaintiff brought suit asserting claims under 42 U.S.C. § 1983 for injunctive relief and monetary damages arising out of the dissemination of his Texas criminal record. Judge Borman dismissed Plaintiff's case on res judicata grounds. On August 5, 2008, Defendants Daughtrey, McKeague, and Van Tatenhove of the United States Court of Appeals for the Sixth Circuit dismissed Plaintiff's petition for a writ of mandamus and accompanying motion for a criminal grand jury investigation.[2] These Defendants, as federal judges, are immune from suits seeking monetary damages. *See, e. g.*, *Forrester v. White*, 484 U.S. 219 (1988); *Cleavinger v. Saxner*, 474 U.S. 193 (1985); *Dennis v. Sparks*, 449 U.S. 24 (1980); *Supreme Court of Va. v. Consumers Union of United States, Inc.*, 446 U.S. 719 (1980); *Butz v. Economou*, 438 U.S. 478 (1978); *Stump v. Sparkman*, 435 U.S. 349 (1978); *Pierson v. Ray*, 386 U.S. 547 (1967). Judicial immunity "is not overcome by allegations of bad faith or malice." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Therefore, Plaintiff's Count VII must be dismissed in its entirety.

**H.      COUNT VIII: "OFFICIAL MISCONDUCT; DERELICTION OF DUTY; INCOMPETENCE; GROSS NEGLIGENCE; MALFEASANCE OF DUTY; PERJURY OF OATH; MISPRISION OF FELONY; CONSPIRACY TO DEPRIVE OF RIGHTS; OBSTRUCTION OF JUSTICE; (AND) CONSPIRACY TO DEFRAUD THE UNITED STATES" BY MELANIE TIDDLE, SHANETTA Y. CUTLAR, MARIE O'ROURKE, AND MICHAEL MUKASEY**

In this Count, Plaintiff first alleges that Defendant Tiddle failed to support and enforce Plaintiff's rights. In August 2008, Plaintiff contacted the FBI's Office for Victims' Rights Complaints. On October 14, 2008, Tiddle, in her capacity as a representative of the FBI's Office

---

[2] The Honorable Gregory F. Van Tatenhove, United States District Court Judge for the Eastern District of Kentucky, sitting by designation.

for Victim's Assistance, responded to Plaintiff via telephone.  Tiddle informed Plaintiff that she had "no authority to open an FBI investigation" and that there was nothing she could do in the event that the "FBI does not find enough evidence to open a case."  Ultimately, Tiddle informed Plaintiff that her office could not provide him with assistance until he was characterized as a bona fide crime victim by the FBI.  The facts alleged by Plaintiff do not remotely give rise to any cause of action against Tiddle.  For the reasons set forth in Part IV(A), *supra*, Plaintiff's claims of official misconduct, dereliction of duty, incompetence, gross negligence, malfeasance of duty, perjury of oath, misprision of felony, and obstruction of justice against Tiddle must be dismissed for failure to state a claim upon which relief may be granted.

Plaintiff further alleges that Tiddle conspired to violate his rights to equal protection and to due process.  In addition to being frivolous, Plaintiff's claim fails to allege with whom Tiddle conspired.  Therefore, all claims against Defendant Tiddle are dismissed.

Plaintiff brings the same claims against Defendant O'Rourke, the United States Department of Justice's Victims' Rights Ombudsman.  Plaintiff sent multiple correspondences to O'Rourke before she replied, indicating that he "had not established that (he) is a federal 'crime victim' in an offense charged in Federal district court as required by Department of Justice regulations."  Plaintiff is adamant that he is a federal crime victim, but this Court has been provided no evidence, not even a case number or name, that demonstrates that any criminal charges have been brought in a federal district court where Plaintiff is a victim.  As such, Defendant O'Rourke's representations are accurate and cannot give rise to the causes of action that Plaintiff alleges.  These claims are also frivolous, baseless, and otherwise improper, for reasons set forth in Part IV(A), *supra*. The Court therefore dismisses all claims against Defendant O'Rourke.

18

Plaintiff brings the same claims against Defendant Cutlar who serves as the Director of Special Litigation Section of the Civil Rights Division for the United States Department of Justice. Plaintiff submitted a 37-page letter to Cutlar to which the latter did not respond. For the same reasons as set forth in Part IV(A), *supra*, none of Plaintiff's representations state a claim upon which relief may be granted. Therefore, the Court dismisses all claims against Defendant Cutlar.

Finally, Plaintiff brings the same claims against Defendant Mukasey, the former United States Attorney General. The Attorney General is entitled to qualified immunity from Plaintiff's claims. *See generally Anderson v. Creighton*, 483 U.S. 635, 638 (1987). For the reasons set forth in Part IV(A), *supra*, these claims must be dismissed. Accordingly, Plaintiff's Count VIII also must be dismissed in its entirety.

## I.   COUNT IX: "MISREPRESENTATION; INTERSTATE/MAIL FRAUD; CONSPIRACY TO DEFRAUD; INCOMPETENCE; GROSS NEGLIGENCE; MALFEASANCE OF DUTY; PERJURY OF OATH; CONSPIRACY TO DEPRIVE OF RIGHTS"; (AND) CONSPIRACY TO OBSTRUCT JUSTICE" BY FORMER U.S. PARDONS ATTORNEY MARGARET COLGATE LOVE

On May 24, 2006, Plaintiff contacted Defendant Margaret Colgate Love, who served as a United States Pardon Attorney between 1990 and 1997, explaining his history. The two corresponded several times and ultimately engaged in a "hiring agreement" whereby Love was to "secure an official interpretation, preferably from the Attorney General of Texas, of the effect under Texas law of the set-aside and pardon." Love apparently communicated with a "government contact" in Texas regarding that narrow issue. Plaintiff contends that Love "fraudulently misrepresented" the factual background of his case and omitted various other details that Plaintiff thought were particularly relevant. Love's contact informed her that an "official" opinion from the Attorney General would be fruitless because "the law was . . . clear."

Plaintiff fails to allege his conspiracy and fraud claims with any particularity.  The remaining claims lack "an arguable basis in law or fact."  *See Neitzke v. Williams*, 490 U.S. 319, 323 (1989); *see also Wilson v. Yaklich*, 148 F.3d 596, 600 (6th Cir. 1998).  Accordingly, the Court dismisses Count IX in its entirety.

> **J.**  **COUNT X: "OFFICIAL MISCONDUCT; DERELICTION OF DUTY; INCOMPETENCE; GROSS NEGLIGENCE; MALFEASANCE OF DUTY; PERJURY OF OATH; MISPRISION OF FELONY; CONSPIRACY TO DEPRIVE OF RIGHTS; CONSPIRACY TO DEFRAUD THE UNITED STATES; (AND) OBSTRUCTION OF JUSTICE" BY THOMAS A. DAVIS, JR., GREG ABBOTT, SCOTT M. GRAYDON AND OTHER "DOES" EMPLOYED BY THE TEXAS JUDICIARY, THE DEPARTMENT OF PUBLIC SAFETY, AND THE OFFICE OF THE ATTORNEY GENERAL OF TEXAS**

Plaintiff directs his tenth Count at various representatives of the Texas government for interference with his "rights to full faith and credit of his Texas court orders."  Beyond the fact that these officials are immune from Plaintiff's suit, this Court is an improper venue because Defendants reside in Texas, the events about which Plaintiff complains occurred in Texas, and the Court otherwise lacks personal jurisdiction over these Defendants.  *See* 28 U.S.C. § 1391.  Accordingly, Count X is hereby dismissed in its entirety.

> **K.**  **COUNT XI: "CONSPIRACY AGAINST RIGHTS; DEPRIVATION OF RIGHTS UNDER COLOR OF LAW; EXTORTION; PEONAGE; AND CRIMINAL RACKETEERING" - - ALL DEFENDANTS**

In Count XI, Plaintiff realleges the conspiracy claims that he included in Counts I–X.  For the same reasons discussed in the foregoing opinion, the Court dismisses Plaintiff's conspiracy claims against all Defendants.  For reasons set forth in Part IV(A), *supra*, the Court dismisses Plaintiff's claims of extortion, peonage, and criminal racketeering.  Count XI, therefore, also must be dismissed in its entirety.

## V.  CONCLUSION

20

After reviewing the extensive documentation submitted by Plaintiff, the Court concludes that Plaintiff's action

> is a typical example of the kind of action being filed with increasing frequency under the provisions of the Civil Rights Act of 1871, 42 U.S.C. §§ 1981–1986.   Having been defeated in state court proceedings and being unhappy and somewhat humiliated and frustrated by the results of such proceedings, these persons lash out at judges, attorneys, witnesses, court functionaries, newspapers and anyone else in convenient range, terming all of them corruptly evil and charging them with perjury and conspiracy in a last desperate effort to re-litigate the issues on which they have once lost and hoping to secure sizeable damages to boot.

*Shakespeare v. Wilson*, 40 F.R.D. 500, 502 (S.D. Cal. 1966).  For the reasons set forth above, the Court concludes that Plaintiff can prove no set of facts in support of his claims that would entitle him to relief.  His allegations are vague, conclusory, frivolous, and otherwise fail to state claims upon which relief may be granted.  Further, the majority of his claims are lodged at Defendants who are immune from suit.

Accordingly, the Court HEREBY DISMISSES Plaintiff's amended complaint with prejudice under 28 U.S.C. § 1915(e)(2).

IT IS SO ORDERED.

S/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated:  March 25, 2009

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on March 25, 2009.

S/Marie E. Verlinde
Case Manager
(810) 984-3290